(C.D. 4185)

FIRST AMERICAN ARTIFICIAL FLOWERS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 11, 1971)

*Barnes, Richardson & Colburn* (*Joseph Schwartz, James S. O'Kelly,* and *Irving Levine* of counsel) for the plaintiff

*L. Patrick Gray, III,* Assistant Attorney General (*Peter Jay Baskin,* trial attorney), for the defendant.

Before WATSON, MALETZ and RE, Judges

WATSON, Judge: This protest places in issue the classification of certain importations described on the invoices as "Ferns". They were classified as artificial flowers, trees, fruits, etc., wholly or almost wholly of plastics pursuant to item 748.20 of the Tariff Schedules of the United States as modified by T.D. 68–9. Plaintiff claims that the merchandise should properly be classified as articles not specially provided for, of plastics, pursuant to item 774.60 of the tariff schedules.

A pretrial conference was held herein resulting in certain agreements between the parties. The parties stipulated that the involved merchandise is in chief value of plastic. The parties further agreed that a number of articles described on the invoices and entries herein consisted of artificial flowers, fruits or foliage assembled in the same manner and the same in all material respects as the merchandise in *Armbee Corporation, W. J. Byrnes & Co., Inc.* v. *United States,* 60 Cust. Ct. 105, C.D. 3278, 279 F. Supp. 438 (1968), and *Zunold Trading Corporation, et al.* v. *United States,* 60 Cust. Ct. 112, C.D. 3279 (1968). These articles were severed from the case herein and have been disposed of pursuant to a stipulation between the parties. Finally, plaintiff abandoned its protest insofar as it relates to the number 3910 fern plant appearing in entry number 1087963 and entry 1114104 as well as the number 6012 or 7012 fern plant in entry number 1061060. Accordingly, the protest is dismissed insofar as it relates to these articles.

With regard to the remaining articles in dispute, the relevant statutory provisions are as follows:

Classified Under:

Schedule 7, Part 7, Subpart B, Tariff Schedules of the United States, as modified by T.D. 68–9:

Relevant Subpart B headnotes:

1. The provisions of items 748.20 and 748.21 do not include—

\*  \*  \*  \*  \*  \*  \*

 (ii) articles (other than individual parts, such as pistils, stamens, ovaries, petals, calyxes, leaves, and flower heads, fruits, or vegetables without stems and foliage) which have been obtained in one piece from stone, metal, wood, or other material by molding, stamping, carving, forging, or other process;

 (iii) articles consisting of parts assembled otherwise than by binding with flexible materials such as wire, paper, textile material, or foil, or by gluing, or by similar methods; or

\*  \*  \*  \*  \*  \*  \*

Artificial flowers, trees, foliage, fruits, vegetables, grasses, or grains, parts of the foregoing, and articles made of the foregoing (except articles provided for in item 748.15 or 748.40 of this subpart):

748.20 Wholly or almost wholly of plastics_____  26.5% ad val.

Claimed Under:

Schedule 7, Part 12, Subpart D, Tariff Schedules of the United States, as modified by T.D. 68–9:

Articles not specially provided for, of rubber or plastics:

\*  \*  \*  \*  \*  \*  \*

774.60 Other _____  15% ad val.

Each party called one witness to testify on its behalf. Samuel S. Berger, plaintiff's president, testified that he designed the importation in question and supervised the manufacturing process. He stated that the plaintiff company is in the business of manufacturing and importing artificial flowers for decorative purposes. He testified that each fern segment or branch of the importation is molded individually. The three sections are then reinserted into a second mold into which plastic is poured, encasing the three segments at the point where they lie adjacent to one another resulting in a complete three-branch unit

when extracted from the mold. The finished product, a sample of which was placed in evidence as exhibit 1, consists of a plastic representation of a fern possessing a single stem of approximately 8½ inches in length from which emerge three branches, each with the characteristic sub-branchings of a fern. Plaintiff's witness further testified that in his opinion exhibit 1 was not bound with flexible material or assembled by gluing or a similar method.

Defendant's witness was Uhl R. Kuhn, the acting head of the Inspection and Treatment Section of the Plant Quarantine Service of the Department of Agriculture. He testified that the fern represented by exhibit 1 was a single compound leaf consisting of three leaflets and represented a natural fern of the bracken family.

Plaintiff's argument herein is based on its contentions that the merchandise is excluded from classification as an artificial flower, etc., under item 748.20 by virtue of headnote 1(iii) of schedule 7, part 7, subpart B. Plaintiff contends that the importation meets the descriptions in said exclusion for "articles consisting of parts assembled otherwise than by binding with flexible materials * * * or by gluing, or by similar methods * * *." Specifically, plaintiff argues that the method of assembly used herein is not assembly by binding with flexible materials, gluing or similar methods. Defendant argues that the molding method used herein is similar to gluing. Defendant also makes an argument based on its interpretation of headnote 1(ii) of schedule 7, part 7, subpart B. This headnote provides other grounds for excluding articles from classification as artificial flowers, etc., pursuant to the provisions of item 748.20. Certain individual parts, such as leaves, are barred from this exclusion. Defendant asserts that since leaves are barred from the exclusionary effect of headnote 1(ii) and since the importation is a leaf it must follow that it is included in item 748.20. This approach overlooks a number of considerations. First of all, headnote 1(ii) speaks to articles which have been obtained in one piece by whatever method is used. The instant importation is composed of three pieces and hence does not come under the scope of this headnote. In addition and more basic, headnote 1(ii) is only one of four exclusionary provisions affecting item 748.20. The fact that an article may not fulfill the requirements of a given exclusionary provision does not automatically support a conclusion that it should be *included* in the item in question. An article which meets the standards of *any one* of these exclusionary provisions will be excluded from item 748.20.

In sum, the central issue in this case is whether the importation is assembled by binding, gluing or a similar method. We are of the opinion that the method of joining by reinsertion into a mold and the pouring of additional plastics is not binding or gluing or a similar

method. It is a method *other than* those specified in headnote 1(iii) and articles assembled thereby are specifically excluded from classification pursuant to items 748.20 and 748.21.

We base this decision on our understanding of the terms binding and gluing utilized in the headnote. The term binding was discussed in the case of *Armbee Corporation et al.* v. *United States, supra.* In that case, the court held that a snap-on method of joining the components of a flower, was not a "binding" method. The court expressed the view that the use of a "cord, band, ligature, chain, etc." was the identifying characteristic of that method. Binding must have the characteristics of tying which characteristics are not present in the fabrication of the instant importation.

Gluing implies to us in the present context the use of a glue or adhesive to join separate parts. The plastic used herein is not a glue or adhesive. Although it joins separate parts, it does so by reason of its plastic characteristic of encasing the objects placed in a mold in the form dictated by the mold. This technique differs from gluing and partakes more of the characteristics of the original molding, giving formation and shape to the article in question.

In conclusion, we note that the technique of molding is specifically mentioned in headnote 1(ii) as a method of producing articles. We therefore consider its absence from headnote 1(iii) indicative of Congressional intent. This supports the view that molding is a fabrication technique distinct from binding or gluing, that its existence was known to Congress and that it was not one of the methods set forth in headnote 1(iii).

In sum, we find that the article in question consists of parts which have been assembled by a process of molding which differs from the processes of assembly set forth in headnote 1(iii) of schedule 7, part 7, subpart B, and hence the importation is excluded from the provisions of item 748.20. In view of the stipulation of the parties that the article in question is in chief value of plastic, we find that it is properly classifiable pursuant to the provision for other articles of plastics in item 774.60 of the Tariff Schedules of the United States, as modified by T.D. 68-9.

Judgment will issue accordingly.